CENTER FOR DISABILITY ACCESS
Chris Carson, Esq., SBN 280048
Dennis Price, Esq., SBN 279082
Amanda Seabock, Esq., SBN 289900
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Scott Johnson**, | **Case No.** |
| Plaintiff, | |
| v. | **Complaint For Damages And Injunctive Relief For Violations Of:** American's With Disabilities Act; Unruh Civil Rights Act |
| **Aladdin 900, LP**, a California Limited Partnership; **South First Furniture, Inc.**, a California Corporation; and Does 1-10, | |
| Defendants. | |

Plaintiff Scott Johnson complains of Aladdin 900, LP, a California Limited Partnership; South First Furniture, Inc., a California Corporation; and Does 1-10 ("Defendants"), and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. Plaintiff is a level C-5 quadriplegic. He cannot walk and also has significant manual dexterity impairments. He uses a wheelchair for mobility and has a specially equipped van.

1

Complaint

2. Defendant Aladdin 900, LP owned the real property located at or about 647 Tully Rd., San Jose, California, in September 2018.

3. Defendant Aladdin 900, LP owned the real property located at or about 647 Tully Rd., San Jose, California, in October 2018.

4. Defendant Aladdin 900, LP owns the real property located at or about 647 Tully Rd., San Jose, California, currently.

5. Defendant South First Furniture, Inc. owned Rick's Furniture located at or about 647 Tully Rd., San Jose, California, in September 2018.

6. Defendant South First Furniture, Inc. owned Rick's Furniture located at or about 647 Tully Rd., San Jose, California, in October 2018.

7. Defendant South First Furniture, Inc. owns Rick's Furniture ("Furniture Store") located at or about 647 Tully Rd., San Jose, California, currently.

8. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

9. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

10. Pursuant to supplemental jurisdiction, an attendant and related cause

2

of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

11. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

12. Plaintiff went to the Furniture Store in September 2018 and October 2018 (twice) with the intention to avail himself of its goods or services, motivated in part to determine if the defendants comply with the disability access laws.

13. The Furniture Store is a facility open to the public, a place of public accommodation, and a business establishment.

14. Parking spaces are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Furniture Store.

15. Unfortunately, even though there was a parking space marked and reserved for persons with disabilities in the parking lot serving Furniture Store during Plaintiff's visits, the parking space was not van accessible.

16. The parking stall measured about 96 inches in width while the access aisles measured about 60 inches in width. This is not van accessible.

17. On information and belief, Plaintiff alleges that the defendants once had van parking space marked and reserved for persons with disabilities at Furniture Store. Unfortunately, the van parking space was allowed to fade or get paved over.

18. In addition to not having a van-accessible parking space for persons with disabilities, the parking stall and access aisle were not level with each other because there was a built up curb ramp running into the access aisle.

Complaint

19. This curb ramp caused slopes greater than 2.1%.

20. The parking stall ostensibly designed for persons with disabilities did not have the required signage bearing the ISA logo, there was no "Minimum Fine $250", there was no tow-away signage and the access aisle did not have "NO PARKING" warning in it.

21. During plaintiff's visits to the subject property in September 2018 and October 2018 (twice), there was a large trailer or dumpster stored in a faded parking space that appears to have once been reserved for persons with disabilities. The parking space has been allowed to fade so badly, though, that it no longer alerts or serves persons with disabilities. What is more, there is no ADA signage in front of the parking space.

22. Currently, there is no van-accessible parking space.

23. Currently, the parking stall and access aisle are not level with each other.

24. Currently, the parking stall ostensibly designed for persons with disabilities does not have the required signage bearing the ISA logo, there was no "Minimum Fine $250", there was no tow-away signage and the access aisle does not have "NO PARKING" warning in it.

25. Restrooms are another one of the facilities, privileges, and advantages offered by Defendants to patrons of the Furniture Store.

26. The restroom door hardware had a traditional style round knob that required tight grasping and twisting of the wrist to operate during plaintiff's visits.

27. Currently, the restroom door hardware has a traditional style round knob that requires tight grasping and twisting of the wrist to operate.

28. Defendants have failed to maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities at the Subject Property.

29. Plaintiff personally encountered these barriers.

4

Complaint

30. This inaccessible facility denied the plaintiff full and equal access and caused him difficulty.

31. Meanwhile, and even though the plaintiff did not personally confront the barrier, the restroom mirror is mounted on the wall so that its bottom edge is more than 40 inches above the finish floor. In fact, the restroom mirror is about 45 inches high.

32. The plumbing underneath the sink is not wrapped to protect against burning contact.

33. The defendants have failed to maintain in working and useable conditions those features required to provide ready access to persons with disabilities.

34. The barriers identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

35. For example, there are numerous paint/stripe companies that will come and stripe a level, van-accessible parking stall and access aisle and install proper signage on rapid notice, with very modest expense, sometimes as low as $300 in full compliance with federal and state access standards.

36. The barriers in this complaint are easily fixable. For example, replacing door hardware with accessible hardware is a simple and inexpensive task that can be completed without the need to hire a professional.

37. The mirror could be lowered at little to no cost.

38. Insulation can be installed under the sink at a cost of no more than $25.

39. Plaintiff will return to the Furniture Store to avail himself of its goods or services and to determine compliance with the disability access laws. He is

5

Complaint

currently deterred from doing so because of his knowledge of the existing barriers. If the barriers are not removed, the plaintiff will face unlawful and discriminatory barriers again.

40. Given the obvious and blatant nature of the barriers and violations alleged herein, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the complaint, to provide proper notice regarding the scope of this lawsuit, once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11*, 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to his disability removed regardless of whether he personally encountered them).

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

41. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

42. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

  a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the

Complaint

accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

    b.  A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

    c.  A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

43. Any business that provides parking spaces must provide accessible parking spaces. 2010 Standards § 208. Under the 2010 Standards, one in every six accessible parking spaces must be van accessible. 2010 Standards § 208.2.4.

44. Here, the lack of a van parking space is a violation of the law.

45. Under the 2010 Standards, access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted. 2010 Standards 502.4. "Access aisle are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles." 2010 Standards § 502.4 Advisory. Specifically, built up curb ramps are not permitted to project into access aisles and parking spaces. *Id*. No more than a 1:48 slope is permitted. 2010 Standards § 502.4.

46. Here, the failure to provide level parking is a violation of the law.

47. Any business that provides parking spaces must provide accessible

Complaint

parking spaces. 2010 Standards § 208. Under the 2010 Standards, one in every six accessible parking spaces must be van accessible. 2010 Standards § 208.2.4.

48. Here, the defendants routinely stores and dumpster in the one of the parking spaces that used to be marked and reserved for persons with disabilities. This is a violation.

49. Restroom door hardware must have handles and other operating devices that have a shape that is easy to use with one hand and does not require tight grasping, tight pinching, or twisting of the wrist to operate. 2010 Standards § 404.2.7; 309.4.

50. Here, the failure to provide accessible restroom door hardware is a violation of the law.

51. Mirrors shall be mounted with the bottom edge of the reflecting surface no higher than 40 inches above the finish floor. 2010 Standards § 603.3.

52. Here, the mirror is mounted higher than the maximum permitted and is a violation of the ADA.

53. Hot water and drain pipes under lavatories must be insulated or otherwise configured to protect against contact. 2010 Standards §606.5.

54. Here, the failure to wrap the plumbing underneath the sink is a violation of the ADA.

55. The Safe Harbor provisions of the 2010 Standards are not applicable here because the conditions challenged in this lawsuit do not comply with the 1991 Standards.

56. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

57. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

Complaint

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

58. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.  The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishment of every kind whatsoever within the jurisdiction of the State of California.  Cal. Civ. Code §51(b).

59. The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act.  Cal. Civ. Code, § 51(f).

60. Defendants' acts and omissions, as herein alleged, have violated the Unruh Act by, inter alia, denying, or aiding, or inciting the denial of, Plaintiff's rights to full and equal use of the accommodations, advantages, facilities, privileges, or services offered.

61. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Civ. Code § 55.56(a)-(c).)

62. Although the plaintiff was markedly frustrated by facing discriminatory barriers, even manifesting itself with minor and fleeting physical symptoms, the plaintiff does not value this very modest physical personal injury greater than the amount of the statutory damages.

Complaint

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000 for each offense.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

Dated: January 7, 2019          CENTER FOR DISABILITY ACCESS

By: _____

        Chris Carson, Esq.
        Attorney for plaintiff

Complaint